UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

DAVID CLASH-MILLER,

                    Plaintiff,

            v.

SERGEANT JOE ENGLER,

OFFICER ANDREW SLAWEK,

OFFICER CHAD JOSWIAK,

OFFICER TED FONDRK,

ACTING CHIEF VICTOR WAHL,

CITY OF MADISON.

                    Defendants.

**COMPLAINT**

Civil Action No.: 3:21-cv-630

[Trial by Jury Demanded]

## COMPLAINT

NOW COMES THE PLAINTIFF, DAVID CLASH-MILLER, by and through his counsel Gingras, Thomsen & Wachs, LLP, by Robert J. Gingras, and Giesen Law Offices, S.C., by Charles W. Giesen and Jessica Giesen, and submits the following as his complaint in this matter:

### I.        Introduction

1.      This is a civil rights action under 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights to be free of excessive force and unlawful arrest and for equal protection under the laws as secured by the Fourth and Fourteenth Amendments of the United States Constitution.

## II.      Jurisdiction and Venue

2.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

3.      Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because the events and conduct giving rise to the Plaintiff's claims asserted herein occurred within this judicial district.

## III.      Parties

4.      Plaintiff David Clash-Miller is an adult resident of the State of Wisconsin. At the time of the attack which forms the subject of this complaint, David was a 17-year-old minor. David suffered severely as a result of the unlawful conduct of the Defendants.

5.      Defendant City of Madison ("Madison"), with offices of its executive at 210 Martin Luther King Boulevard, Room 403, Madison WI 53703 is and was at all times material hereto, a Municipal Corporation organized under the laws of the State of Wisconsin.

6.      Defendant Madison established, operated and maintained the Madison Police Department ("MPD") at all times material hereto; Madison is ultimately responsible for the training, supervising, and discipline of MPD employees and the creation and implementation of its policies and procedures through its Chief of Police, Defendant Acting Chief Victor Wahl, and had ultimate control and authority over MPD and all Defendants, and pursuant to Wis. Stat. § 895.46, is obligated to indemnify all Defendants in this action.

7.     Defendant Sergeant Joe Engler ("Engler") is an adult citizen of the State of Wisconsin and a resident of the State of Wisconsin. Defendant Engler was a sergeant with the MPD at all times relevant to this action and was acting under color of law and within the scope of his employment with the MPD or Madison at all times relevant hereto.

8.     Defendant Officer Andrew Slawek ("Slawek") is an adult citizen of the State of Wisconsin and a resident of the State of Wisconsin. Defendant Slawek was an officer with the MPD at all times relevant to this action and was acting under color of law and within the scope of his employment with the MPD or Madison at all times relevant hereto.

9.     Defendant Officer Chad Joswiak ("Joswiak") is an adult citizen of the State of Wisconsin and a resident of the State of Wisconsin. Defendant Joswiak was an officer with the MPD at all times relevant to this action and was acting under color of law and within the scope of his employment with the MPD or Madison at all times relevant hereto.

10.    Defendant Officer Ted Fondrk ("Fondrk") is an adult citizen of the State of Wisconsin and a resident of the State of Wisconsin. Defendant Fondrk was an officer with the MPD at all times relevant to this action and was acting under color of law and within the scope of his employment with the MPD or Madison at all times relevant hereto.

## IV.    Background

11.    According to the available statistics from the United States Census Bureau, people identifying as Black or African American make up 6.8% of the total population of the City of Madison, Wisconsin.

12.    According to the Defendant City of Madison, a staggering 47% (3,932 out of 8,330) of all individuals arrested by the City of Madison Police Department in 2019

were African-American. *QuickFacts Madison city, Wisconsin*, UNITED STATES CENSUS BUREAU, https://www.census.gov/quickfacts/fact/table/madisoncitywisconsin/LND110210 (last visited August 17, 2020).

13.     Still disproportionate to that astonishing arrest data, 56.8% of all individuals subject to force by the City of Madison Police Department in 2019 were African-American. *2019 Accountability Report*, MADISON POLICE DEPARTMENT, https://www.cityofmadison.com/police/documents/AccountabilityRpt2019.pdf (last visited August 17, 2020).

14.     This trend is nothing new. The Wisconsin State Journal reported in 2015 that a "black person in Madison is over 10 times more likely than a white person to be arrested, according to data analyzed by the State Journal that showed African-Americans — who make up about 7 percent of the city's population — account for 45 percent of arrests." Savidge, Nico, *Analysis: Blacks in Madison arrested at more than 10 times rate of whites*, Wisconsin State Journal (August 31, 2015) available at https://madison.com/wsj/news/local/crime-and-courts/analysis-blacks-in-madison-arrested-at-more-than-10-times-rate-of-whites/article_fd52f630-9647-5541-8114-a2541b8a8924.html.

15.     As the world is acutely aware in the wake of the attacks on George Floyd, Jacob Blake, Stephon Clark, Philando Castille, Alton Sterling, Freddie Gray, and others, the United States is in the midst of an ongoing crisis of police violence against Black men.

16.     Black men who live with mental illness face even greater risks of police violence.

17.     This case is yet another chapter in this ongoing American tragedy.

18.     Responding to what the Mayor of Madison admitted was a "a mental health call for an African-American 17-year-old in mental health crisis," Defendants Engler, Slawek, Joswiak and Fondrk violently restrained, gagged and then beat David.

### V.     June 3, 2019 Attack on David Clash-Miller

19.     On June 3, 2019 Defendants Slawek and Joswiak were dispatched to David's residence in response to reports that he was suffering from a mental health episode.

20.     David has a history of mental health illness and was prescribed a litany of medication to treat his illness.

21.     On the day in question, it was believed that David was not taking his medication.

22.     Earlier that day, David was behaving irrationally at school.

23.     As was the custom of both the school and David, he took a nap in the nurse's office to calm down.

24.     After he relaxed, David was sent home to shower.

25.     Regardless, after some additional irrational behavior at his residence, David's foster parent reached out to a school police liaison.

26.     Together, the foster parent and the officer organized a police escort to transport David to a mental health facility.

27.     Defendants Slawek and Joswiak were dispatched to David's residence for the express purpose of safely transporting David to mental health treatment, as had been done in the past.

28.     David was not being arrested for committing any crime.

29.     The Mayor of Madison, Satya Rhodes-Conway admitted that the Defendants were "handling… a mental health call for an African-American 17-year-old in mental health crisis."

30.     While Defendants Slawek and Joswiak were on their way to David's residence, they heard from another officer, Rayvell Gillard.

31.     Officer Gillard told Defendants Slawek and Joswiak that he had experience with David amidst mental health distress.

32.     Officer Gillard told Defendants Slawek and Joswiak that David would be calm in the presence of officers regardless of any irrational or upsetting behavior beforehand.

33.     When Defendants Slawek and Joswiak arrived, David was showering, as he had been instructed to do.

34.     Defendants Slawek and Joswiak allowed David to finish his shower and put on clothes.

35.     As the Defendants' patience demonstrated, there was no haste or concern that David was a threat to anyone's safety.

36.     After his shower, David met with Defendants Slawek and Joswiak and learned that they would be escorting him to a mental health facility.

37.     David never refused to go to treatment, and instead simply requested to gather his cell phone and socks before leaving with the officers.

38.     Defendants Slawek and Joswiak had no issue with this – they let David go to the basement to collect his socks and cell phone.

39.     Defendants Slawek and Joswiak followed David as he retrieved his cell phone from the basement: [1]



40.     After grabbing his phone, David walked back toward Defendants Slawek and Joswiak, peacefully leaving the basement.



41.     David calmly walked past Defendant Slawek as he continued to exit.

---

[1] Video footage published by Madison365 is available at
https://www.youtube.com/watch?time_continue=5&v=mVqysc2ott8&feature=emb_logo

42.     David made no sudden movements and never attempted to flee.

43.     At this point in time, 17 year-old David weighed approximately 140 pounds.

44.     This was the last moment that David would experience any semblance of dignity or freedom in the presence of the Defendant officers.

45.     As David passed Defendant Slawek, Defendant Slawek wrapped his arms around David from behind.



46.     As soon as Defendant Slawek was in position behind David, he slammed David against the adjacent door.



47.     After throwing David against the door, Defendant Slawek tackled him onto the couch.



48.     David did nothing to resist or defend himself against the officer's violent attack.

49.     While positioned atop David, and while pinning him down, Defendant Slawek choked David and pressed his hand into David's face.



50.     The officers radioed for additional assistance as they continued to restrain David, who, just moments earlier, was peacefully attempting to follow their escort to mental health treatment.

51.     Defendant Fondrk arrived first and joined Defendants Slawek and Joswiak in mounting and restraining David.

52.     The trio – Defendants Fondrk, Slawek and Joswiak, grabbed a pillowcase and covered David's mouth and nose.



53.     The three officers together forced David's small, 140-pound body, into complete submission.

54.     At this time, the force exerted by Defendants Fondrk, Slawek and Joswiak made it impossible for David to move his arms or legs in any fashion that threatened the safety of anyone present in the room.

55.     In effect, Defendants Fondrk, Slawek and Joswiak had shackled David to the couch.

56.     After Defendants Fondrk, Slawek and Joswiak had fully restrained David on the couch for some time, Defendant Sergeant Engler arrived on the scene.

57.     As he approached David, Defendant Engler turned his baseball cap around as if he was preparing for an at-bat.



58.    As he arrived by David's side, Defendant Engler calmly took out a bag from his pocket and put it over David's head.



59.    Defendant Engler, a sergeant, was not trained on how to use this bag at the moment he put in on David.

60.    After the bag was placed over David's head, four MPD officers, Defendants Slawek, Engler, Joswiak and Fondrk, were putting pressure on nearly every square inch of David's body to keep him restrained.

61.    For Defendant Engler, forcing complete physical submission of David was not enough.

62.     While David's head was stuffed inside of a bag, and while three other officers restrained David's movement, Defendant Engler, a sergeant in the Madison Police Department, punched David in his head repeatedly.

63.     Defendant Engler delivered three punches to David's head while his head remained in the bag, and while three other officers held his entire body down.

  

### VI.     Defendant City of Madison Refuses to Enforce MPD Policy

64.     The MPD Mission Statement, MPD Code of Conduct, and MPD Standard Operating Procedures establish the framework within which MPD officers are permitted to perform their duties in accordance with the law.

65.     This case demonstrates that the Defendant City of Madison permits its officers to violate this Mission Statement, Code of Conduct, and Standard Operating procedures, as well as the law

66.     The Madison Police Department concluded that the asymmetrical assault on David, a minor, amounted to simply "two minor violations" of MPD procedures by the involved sergeant, and no one else.

67.     The MPD further concluded that "officers' use of force during the incident was reasonable."

12

68.     The Mission Statement of the MPD sets forth that the MPD is committed to
the "dignity of all people," and "individual and constitutional rights."

## Mission Statement

We, the members of the Madison Police Department, are
committed to providing high quality police services that
are accessible to all members of the community. We
believe in the dignity of all people and respect individual
and constitutional rights in fulfilling this mission.

69.     The MPD Code of Conduct sets forth that MPD officers are sworn to respect
human dignity.

### HUMAN DIGNITY

We acknowledge the value of all people and carry out our duties with dignity, respect, and
fairness to all. Furthermore, the Department recognizes and respects the value of all human life.

70.     The MPD Code of Conduct sets forth that MPD officers are sworn to respect
diversity in the community.

### DIVERSITY

We engage in continuous learning about different cultures, values and people. We promote
mutual acceptance and inclusion of all.

71.     The MPD Code of Conduct sets forth that MPD officers are sworn to offer
courtesy, respect, and civility in the community.

### 10.     Courtesy, Respect and Professional Conduct

Members of the Department shall be courteous and respectful to the public and co-workers. Our
encounters should be predicated upon civility and the appropriate use of an officer's discretion
based upon the totality of the circumstances. Members of MPD should avoid abusive, profane
language or gestures and actions that bring disrespect upon the Department or members of the
community. This includes unreasonable orders, or warnings not within the lawful scope of the
member's authority.

72.     MPD Standard Operating Procedures authorize the use of non-deadly force in only limited circumstances.

**NON -DEADLY FORCE AUTHORIZED**

Non-deadly force is only authorized when an officer reasonably believes it is necessary to control a person under any of the following circumstances:

1.     Detaining a person reasonably suspected of unlawful behavior.
2.     Effecting a lawful arrest.
3.     Achieving/maintaining control of resistive subjects.
4.     Preventing escape.
5.     Protecting oneself or another.
6.     Maintaining order.
7.     Taking a person into custody for emergency detention or protective custody.

73.     MPD Standard Operating Procedures direct MPD officers to consider certain factors when utilizing force.

**FORCE CONSIDERATIONS**

Officers shall use the degree of force believed to be objectively reasonable to control a situation considering the following factors:

1.     The existence of alternative methods of control.
2.     Physical size, strength and weaponry of the person as compared to the officer.
3.     The nature of the encounter.
4.     Actions of the person.
5.     The severity of the offense.
6.     Whether the subject poses a threat to the safety of officers or citizens.
7.     Whether the subject is actively resisting arrest or attempting to evade arrest by flight.

74.     MPD Standard Operating Procedures permit the use of force under certain, special circumstances.

**SPECIAL CIRCUMSTANCES**

Depending on the situation, there are a number of special circumstances officers may consider when engaging in and evaluating reasonable uses of force. These factors include, but are not limited to:

1.       Reasonable perception of threat.
2.       Special knowledge of the subject.
3.       Sudden assault.
4.       Subject's ability to escalate force rapidly.
5.       Officer's physical positioning.
6.       Injury or exhaustion.
7.       Equipment and training.
8.       Availability of backup.
9.       Other exigent circumstances.

Control of a person through presence and verbal commands shall always be the preferred method of control. Because verbal commands are not always effective or appropriate in gaining compliance, officers may escalate the degree of force used, or make an affirmative decision to disengage, based on the actions of the person they are attempting to control. Officers will continually evaluate/assess the situation and need for the use of force. Once officers reasonably believe a person is under control, they must reduce their level of force to that needed to maintain such control, and then begin steps to render aid, when applicable.

75.     These policies and procedures are worthless if they are not followed and enforced.

76.     The Defendant officers launched an attack on David in his own house with no reason to do so, and without any justification within the above-referenced policies, code of conduct, or mission statement of the Madison Police Department.

77.     After the initial attack, the Defendant officers continued their wanton and violent behavior by punching David in the head repeatedly, after his small frame was entirely subdued, and his head was stuffed into a bag.

78.     Again, this continued attack was also without any justification within the above-referenced policies, code of conduct and mission statement of the Madison Police Department.

79.     Mayor Rhodes-Conway even refused to say that the Defendants followed the law or MPD policy, and admitted that:

The fundamental duty of police is to serve humanity. Police are required to only use force that is reasonable and necessary, and it is my belief that we must do better. The officer's actions may or may not have violated the law; and may or may not have violated MPD policy; however, police actions in this incident are not and will never be acceptable as best practice in the City of Madison.

Mayor Rhodes-Conway, *Mental Health and Emergency Response*, Mayor Satya's

Blog,        August        6,        2019,        available        at

https://www.cityofmadison.com/mayor/blog/mental-health-and-emergency-response .

80.    The conduct and behavior of MPD Officers here amounted to egregious violations of MPD Standard Operating Procedures, Mission Statement, and Code of Conduct outline above.

81.    By refusing to enforce its own policies, Defendant City of Madison is approving unconstituional behavior within its ranks.

**First Claim for Relief - EXCESSIVE FORCE against Defendant Engler**

82.    Plaintiff realleges and incorporates by reference the allegations of all the preceding paragraphs.

83.    At all relevant times herein, the above-named Defendant was a "person" for purposes of 42 U.S.C. § 1983 and acted under color of state law to deprive David of his constitutional rights.

84.    At all times material hereto, the above-named Defendant used unnecessary, excessive force, including but not limited to, grabbing, tackling, restraining, choking, and repeatedly punching David while he was already subdued.

85.     At the time the above-named Defendant used excessive force on David, there was no threat (immediate or otherwise) of death or serious bodily harm to anyone in the area.

86.     The Defendant's conduct constituted excessive force without cause or justification in violation of David's Fourth Amendment Rights as incorporated by the Fourteenth Amendment and/or his equal protection rights guaranteed by that same Amendment.

87.     At all times material, the Defendant was an MPD Officer acting under color of the statutes, customs, ordinances, and usage of the City of Madison and MPD and was acting in the scope of his employment.

88.     The described conduct on the part of the Defendant as set forth above was a cause of the plaintiff's injuries, losses, and damages as set forth herein.

89.     The Defendant, Madison, is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against Defendant Engler in this action because he was acting within the scope of his employment when he committed the acts described above.

**Second Claim for Relief - EXCESSIVE FORCE against Defendant Slawek**

90.     Plaintiff realleges and incorporates by reference the allegations of all the preceding paragraphs.

91.     At all relevant times herein, the above-named Defendant was a "person" for purposes of 42 U.S.C. § 1983 and acted under color of state law to deprive David of his constitutional rights.

92.     At all times material hereto, the above-named Defendant used unnecessary, excessive force, including but not limited to, grabbing, tackling, restraining, choking, and binding David to expose him, defenseless, to repeated punches to the head, while he was already subdued.

93.     At the time the above-named Defendant used excessive force on David, there was no threat (immediate or otherwise) of death or serious bodily harm to anyone in the area.

94.     The Defendant's conduct constituted excessive force without cause or justification in violation of David's Fourth Amendment Rights as incorporated by the Fourteenth Amendment and/or his equal protection rights guaranteed by that same Amendment.

95.     At all times material, the Defendant was an MPD Officer acting under color of the statutes, customs, ordinances, and usage of the City of Madison and MPD and was acting in the scope of his employment.

96.     The described conduct of the part of the Defendant as set forth above was a cause of the plaintiff's injuries, losses, and damages as set forth herein.

97.     The Defendant, Madison, is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against Defendant Slawek in this action because he was acting within the scope of his employment when he committed the acts described above.

**Third Claim for Relief - EXCESSIVE FORCE against Defendant Joswiak**

98.     Plaintiff realleges and incorporates by reference the allegations of all the preceding paragraphs.

99.     At all relevant times herein, the above-named Defendant was a "person" for purposes of 42 U.S.C. § 1983 and acted under color of state law to deprive David of his constitutional rights.

100.    At all times material hereto, the above-named Defendant used unnecessary, excessive force, including but not limited to, grabbing, tackling, restraining, choking, and binding David to expose him, defenseless, to repeated punches to the head, while he was already subdued.

101.    At the time the above-named Defendant used excessive force on David, there was no threat (immediate or otherwise) of death or serious bodily harm to anyone in the area.

102.    The Defendant's conduct constituted excessive force without cause or justification in violation of David's Fourth Amendment Rights as incorporated by the Fourteenth Amendment and/or his equal protection rights guaranteed by that same Amendment.

103.    At all times material, the Defendant was an MPD Officer acting under color of the statutes, customs, ordinances, and usage of the City of Madison and MPD and was acting in the scope of his employment.

104.    The described conduct of the part of the Defendant as set forth above was a cause of the plaintiff's injuries, losses, and damages as set forth herein.

105.     The Defendant, Madison, is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against Defendant Joswiak in this action because he was acting within the scope of his employment when he committed the acts described above.

**Fourth Claim for Relief - EXCESSIVE FORCE against Defendant Fondrk**

106.     Plaintiff realleges and incorporates by reference the allegations of all the preceding paragraphs.

107.     At all relevant times herein, the above-named Defendant was a "person" for purposes of 42 U.S.C. § 1983 and acted under color of state law to deprive David of his constitutional rights.

108.     At all times material hereto, the above-named Defendant used unnecessary, excessive force, including but not limited to, grabbing, tackling, restraining, choking, and binding David to expose him, defenseless, to repeated punches to the head, while he was already subdued.

109.     At the time the above-named Defendant used excessive force on David, there was no threat (immediate or otherwise) of death or serious bodily harm to anyone in the area.

110.     The Defendant's conduct constituted excessive force without cause or justification in violation of David's Fourth Amendment Rights as incorporated by the Fourteenth Amendment and/or his equal protection rights guaranteed by that same Amendment.

111.    At all times material, the Defendant was an MPD Officer acting under color of the statutes, customs, ordinances, and usage of the City of Madison and MPD and was acting in the scope of his employment.

112.    The described conduct of the part of the Defendant as set forth above was a cause of the plaintiff's injuries, losses, and damages as set forth herein.

113.    The Defendant, Madison, is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against Defendant Fondrk in this action because he was acting within the scope of his employment when he committed the acts described above.

## Fifth Claim For Relief – SECTION 1983 FAILURE TO INTERVENE against Defendant Slawek

114.     Plaintiff realleges and incorporates by reference the allegations of all the preceding paragraphs.

115.    Before David suffered from the unlawful abuse and excessive use of force described above, the above-named Defendant, individually and collectively with the other officers on location, had many opportunities to intervene and prevent injuries and losses David suffered as a result of the unlawful conduct and excessive use of force described above.

116.    Before David was repeatedly punched in the head by Defendant Engler the other Defendant Officers including Defendant Slawek could have intervened to prevent David's injuries and constitutional deprivations.

117.    As a result of Defendant Slawek's failure to intervene, David suffered injuries, losses and damages as set forth herein.

118.    The Defendant Madison is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against the individual employee Defendants in this action because said Defendants were acting within the scope of their employment when they committed the acts described above.

## Sixth Claim For Relief – SECTION 1983 FAILURE TO INTERVENE against Defendant Joswiak

119.     Plaintiff realleges and incorporates by reference the allegations of all the preceding paragraphs.

120.    Before David suffered from the unlawful abuse and excessive use of force described above, the above-named Defendant, individually and collectively with the other officers on location, had many opportunities to intervene and prevent injuries and losses David suffered as a result of the unlawful conduct and excessive use of force described above.

121.    Before David was repeatedly punched in the head by Defendant Engler the other Defendant Officers including Defendant Joswiak could have intervened to prevent David's injuries and constitutional deprivations.

122.    As a result of the Defendant Joswiak's failure to intervene, David suffered injuries, losses and damages as set forth herein.

123.    The Defendant Madison is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against the individual employee Defendants in this

action because said Defendants were acting within the scope of their employment when they committed the acts described above.

**Seventh Claim For Relief – SECTION 1983 FAILURE TO INTERVENE against**

**Defendant Fondrk**

124.     Plaintiff realleges and incorporates by reference the allegations of all the preceding paragraphs.

125.     Before David suffered from the unlawful abuse and excessive use of force described above, the above-named Defendant, individually and collectively with the other officers on location, had many opportunities to intervene and prevent injuries and losses David suffered as a result of the unlawful conduct and excessive use of force described above.

126.     Before David was repeatedly punched in the head by Defendant Engler the other Defendant Officers including Defendant Fondrk could have intervened to prevent David's injuries and constitutional deprivations.

127.     As a result of the Defendant Fondrk's failure to intervene, David suffered injuries, losses and damages as set forth herein.

128.     The Defendant Madison is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against the individual employee Defendants in this action because said Defendants were acting within the scope of their employment when they committed the acts described above.

**EIGHTH Claim for Relief – Monell Claim**

129.   Plaintiff realleges and incorporates by reference all the allegations in the preceding paragraphs.

130.   The acts of the individual Defendants, including unlawfully arresting and attacking David without any justification, was done in accordance with the City of Madison and its Police Department's de facto policy, regulation, decision or custom condoning excessive force in executing arrests, false arrests, and/or otherwise violating person's equal protection rights, including by the City's or in this case to date, Defendant Chief Wahl's, failure to adequately discipline the Defendant officers for such violations. That these respective de facto policies were officially adopted, expressly or implicitly, or promulgated or practiced or ratified by the Defendant City of Madison, through its Acting Chief of Police Wahl, and as such constitute a de facto governmental custom in such department, even though such custom may not have received written formal approval by the City, and even though such de facto policies are inconsistent with or even violate MPD's written policies.

131.   This official or de facto policy or custom of utilizing excessive force and/or violating person's equal protection rights permitted, encouraged, tolerated and ratified the actions of the individual Defendants, all in malicious or reckless disregard or with deliberate indifference to David's rights, guaranteed by the Fourth amendment and others by, among others, the Defendant Acting Chief's failure to adequately discipline the officers for their unlawful conduct.

132.    That this official or de facto policy and custom of utilizing excessive force and/or violating person's equal protection rights arose and/or was allowed to continue as a result of, among others, the Madison and the MPD's failure to adequately supervise, discipline, and/or train its employees.

133.    That the described conduct on the part of all the Defendants, including Madison Acting Chief of Police Wahl, in his official capacity, was a cause of the plaintiff's injuries, losses and damages as set forth herein.

134.    The Defendant Madison is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against the individual employee Defendants in this action because said Defendants were acting within the scope of their employment when they committed the acts described above.

**NINTH CLAIM FOR RELIEF – PUNITIVE DAMAGES against all Defendants**

135.    The above-described conduct of all the individual Defendants was unlawful, extreme, malicious, outrageous and/or intentional.

136.    Such conduct was intended to cause David unnecessary and severe personal physical and psychological and emotional injuries.

137.    Such conduct on the part of all the individual Defendants was a cause of the severe personal injuries, physical and psychological and emotional, suffered by David.

138.    At all times material hereto, the individual Defendants acted maliciously and/or with reckless disregard and/or with deliberate indifference towards David or in

an intentional disregard of his rights, such as to subject all the individual Defendants to punitive damages.

139.     The Defendant Madison is liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against the individual employee Defendants in this action because said Defendants were acting within the scope of their employment when they committed the acts described above.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

    a.   Against Defendants Engler, Slawek, Joswiak, and Fondrk in their individual capacities, for compensatory damages, for the violation of David's rights, as set forth above, in an amount to be determined at a trial of this matter;

    b.   Against Defendant Sergeant Engler for punitive damages for the violation of David's rights, as set forth above, in an amount to be determined at a trial of this matter;

    c.   Against Defendant Officer Slawek for punitive damages for the violation of David's rights, as set forth above, in an amount to be determined at a trial of this matter;

    d.   Against Defendant Officer Joswiak for punitive damages for the violation of David's rights, as set forth above, in an amount to be determined at a trial of this matter;

    e.   Against Defendnat Officer Fondrk for punitive damages for the violations of David's rights, as set forth above, in an amount to be determined at trial of this matter;

    f.   Against Defendant Acting Chief Victor Wahl, in his official capacity, for compensatory damages for the violation of David's rights, as set forth above, in an amount to be determined at a trial of this matter;

g. Against Defendant City of Madison for its liability pursuant to Wis. Stat. § 895.46 to indemnify the individual Defendants in an amount to be determined at a trial of this matter;

h. For all costs, disbursements and actual attorneys' fees pursuant to 42 U.S.C.A. § 1988, and for such other relief as the Court deems just and equitable.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL OF THIS MATTER.**

Dated this 6th day of October, 2021.

GINGRAS, THOMSEN, & WACHS, LLP

Electronically Signed by:

*/s/ Robert J. Gingras*
Robert J. Gingras
State Bar No. 1002909
8150 Excelsior Drive
Madison, WI  53717
Phone: (608) 833-2632
Fax: (608) 833-2874
gingras@gtwlawyers.com

GIESEN LAW OFFICES, S.C.

Electronically Signed by:

*/s/ Charles W. Giesen*
Charles W. Giesen
State Bar No. 1014364
Jessica J. Giesen
State Bar No. 1059212
14 S. Broom Street
Madison, WI 53703
Phone: (608) 255-8200
Fax: (608) 255-3771
cgiesen@giesenlaw.com
jgiesen@giesenlaw.com